UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-180-TBR

BILL WIMBERLY,                                                                                                     PLAINTIFF

v.

TRANSCRAFT, *et al.*,                                                                                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Metro Staffing and Barbie Johnson's Motion to Dismiss for Failure to State a Claim. [DN 12]. *Pro se* Plaintiff Bill Wimberly did not respond and the deadline to do so has passed. This matter is ripe for adjudication. For the reasons stated herein, Defendants' Motion to Dismiss for Failure to State a Claim, [DN 12], is GRANTED in part and DENIED in part.

## BACKGROUND

On May 9, 2019, Plaintiff Bill Wimberly was employed by Metro Staffing, a temporary employment agency. [DN 1-1 at 10]. Plaintiff was assigned to work at Transcraft Corporation as a Human Resources assistant when he claims the following events occurred:

> Kim [Sumner, Plaintiff's supervisor,] had returned from her morning meeting, and asked if I would take some pictures of her with her cell phone. She stood in front of the file cabinet and asked that I take pictures of the lower half of her body as she posed. Then she stated that she needed to put pants on underneath her skirt. I froze facing my computer and facing the opposite direction. Kim then had me to take more pictures with the skirt and pants. Afterwards, Kim went to her desk to remove the pants. I felt very uncomfortable in this process. After much thought and prayer, I felt I needed to report this incident to protect myself.

*Id.* The next day, Plaintiff claims that Ms. Sumner went through the papers on his desk and began changing processes without following any formal procedure. *Id.* On May 13, Plaintiff reported the photography incident to Jason Hite, a member of Transcraft management, and Barbie Johnson, a regional manager at Metro Staffing. *Id.* On May 16, Plaintiff contacted Ms. Johnson again to report

that Ms. Sumner had "begun subtle retaliation by making comments such as 'I am the HR manager and I can take action.'" *Id.* Plaintiff claims he felt as though Ms. Sumner "was trying to find fault in all the tasks that [he] would complete." *Id.*

On May 20, Plaintiff spoke with Craig Arnet, the plant manager at Transcraft, and provided a written statement regarding the photography incident and subsequent retaliation by Ms. Sumner. *Id.* On May 22, Ms. Sumner removed Plaintiff from his office and assigned him to a cubicle and requested his computer password and login information. *Id.* Plaintiff responded that if Ms. Sumner had his log-in information, "she would be responsible for all the entries and changes" that would be made on his computer. *Id.* Ms. Sumner replied that Plaintiff "would not be at [his] desk too long." *Id.* On May 24, Mr. Arnet informed Ms. Johnson that Plaintiff could no longer work at Transcraft. *Id.* On May 27, Ms. Johnson notified Plaintiff that he had been terminated from Transcraft effective immediately. *Id.*

On November 25, 2019, Plaintiff filed the current action against Transcraft, Ms. Sumner, Mr. Arnet, Metro Staffing, and Ms. Johnson pursuant to Title VII of the Civil Rights Act of 1964. [DN 1]. The Court interprets Plaintiff's *pro se* complaint as alleging race-based discrimination and retaliation for filing a hostile work environment complaint due to sexual harassment. [DN 1-1 at 11]. On March 27, 2020, Defendants Metro Staffing and Barbie Johnson filed the instant motion to dismiss for failure to state a claim. [DN 12].

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir.

2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc.*, 552 F.3d at 434 (citing *Great Lakes Steel,* 716 F.2d at 1105). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

## DISCUSSION

### I. Individual Liability

As a threshold matter, Defendants argue that Plaintiff failed to state a claim under Title VII of the Civil Rights Act against Barbie Johnson because Title VII only imposes liability on employers, not individuals. [DN 21-1 at 52]. "Title VII provides that 'it shall be an unlawful employment practice for an *employer*' to discriminate on the basis of race, color, religion, sex, or national origin. A person aggrieved by such discrimination may bring a civil action against the '*employer*.'" *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997) (citing 42 U.S.C. §§ 2000e-2(a), 2000e-5(b)) (emphasis added). Thus, "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Id.*

3

None of the facts alleged in the Complaint, even liberally construed, suggest that Ms. Johnson is an "employer" as contemplated under Title VII. Therefore, Plaintiff's Title VII claims against Ms. Johnson must be dismissed for failure to state a claim upon which relief may be granted.

## II.    Race-Based Discrimination

Next, the Court will analyze Plaintiff's race-based discrimination claim. In cases such as this where the plaintiff does not present direct evidence of discrimination, the plaintiff "must first allege a prima facie case under the framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), by pleading facts supporting the following elements: that '(1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees.'" *Brown v. Accenture Fed. Servs.*, No. 15-24-GFVT, 2016 WL 3298543, at *6 (E.D. Ky. June 13, 2016) (quoting *Lewis v. Norfolk S. Ry. Co.*, 590 F. App'x 467, 469 (6th Cir. 2014)). At this stage of the litigation, the Court need only consider whether Plaintiff has pled sufficient facts to establish a *prima facie* case. *Id.* "The subsequent stages of burden-shifting under the *McDonnell-Douglas* framework, such as whether the employer had a legitimate, non-discriminatory reason for terminating him, or whether such a reason is pretextual, are not at issue at this juncture." *Id.*

First, there is no dispute that Plaintiff is African American, and thus, a member of a protected class. Additionally, Plaintiff claims that he was ultimately terminated from his position at Transcraft. [DN 1-1 at 10]. Given that "[t]ermination is the quintessential adverse employment action," *Harris v. Burger King Corp.*, 993 F.Supp.2d 677, 686 (W.D. Ky. 2014), Plaintiff has pled facts demonstrating an adverse employment decision.

Next, the Court will consider Plaintiff's job qualifications. In the context of making a *prima facie* case, "a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Brown*, 2016 WL 3298543, at \*6 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003)). To survive a motion to dismiss, Plaintiff "simply needs to allege that his qualifications 'are at least equivalent to the minimum objective criteria required for employment in the relevant field,' an inquiry that 'should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills.'" *Id.* (quoting *Wexler*, 317 F.3d at 575–76). Here, Plaintiff claims he was employed by Metro Staffing as an HR assistant for $18.00 per hour. [DN 1-1 at 10]. He was assigned by Metro Staffing to work for Transcraft from June 19, 2018 until May 27, 2019. *Id.* He does not provide specific information regarding his education, experience, or possession of requisite skills. However, the fact that Plaintiff held this position for nearly a year before his termination suggests that he was qualified for the position. *See Brown*, 2016 WL 3298543, at \*6 (finding plaintiff qualified after he was offered the position, hired, and held the position for several months before termination; and plaintiff's supervisor said he was happy with his performance).

Finally, Plaintiff must plead sufficient facts to support the allegation that he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. "[T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Here, Plaintiff alleges that

5

Transcraft has a pattern and practice of treating its African American employees differently than their white counterparts. [DN 1-1 at 11]. However, he fails to plead any specific facts to support this assertion. Indeed, Plaintiff makes no mention of who he was replaced by or of any other similarly situated non-protected employee that was treated differently. "Absent proof that other employees were similarly situated it is not possible to raise an inference of discrimination." *Brown*, 2016 WL 3298543, at *8 (quoting *Nickell v. Memphis Light, Gas & Water Div.*, 16 F. App'x 401, 402 (6th Cir. 2001) (quoting *Shah v. General Elec. Co.*, 816 F.2d 264, 270 (6th Cir. 1987))).

"Even apart from such deficiencies, however, an essential requirement for disparate treatment claims is that 'the plaintiff must establish that the adverse employment action was motivated, in part, by the plaintiff's protected-group status. Absent a discriminatory basis, an employer does not violate Title VII, even though the discharge may have been arbitrary, unfair, or for no reason at all.'" *Id.* (quoting *Lewis-Smith v. Western Ky. Univ.*, 85 F.Supp.3d 885, 897 (W.D. Ky. 2015) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514 (1993))). Thus, "when a plaintiff does not adequately show that a similarly-situated non-protected employee was treated better, '[a]lternatively, a plaintiff could show that the employer made statements indicative of a discriminatory motive' in order to establish a prima facie case." *Id.* (quoting *Lewis-Smith*, 85 F.Supp.3d at 900 (internal citation and quotation marks omitted)). "For instance, the United States Supreme Court has noted that a prima facie case of racially disparate or discriminatory treatment under Title VII may be established by demonstrating that the management individual responsible for the questioned conduct has 'made numerous derogatory comments about blacks in general and [the plaintiff] in particular,' while pursuing the seemingly inequitable behavior." *Id.* (citing *Kirkwood v. Courier-Journal*, 858 S.W.2d 194, 198 (Ky. Ct. App. 1993) (quoting *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 713, n.2 (1983))). However, "[c]ourts in

discrimination cases often hold that stray remarks made outside the context of the challenged decision are minimally probative of discrimination." *Lewis-Smith*, 85 F. Supp. 3d at 900 (citing *Phelps v. Yale Sec. Inc.*, 986 F.2d 1020, 1026 (6th Cir. 1993)).

In this case, Plaintiff has failed to allege facts indicating that his termination was motivated by his status as an African American. Although Plaintiff mentions that one of his fellow employees was subjected to racial slurs, he has not pled facts to suggest that the individuals responsible for the allegedly discriminatory conduct made derogatory statements to other employees or Plaintiff in particular. Furthermore, there are no other facts in the Complaint to suggest that the adverse employment action was motivated by Plaintiff's status as an African American. Accordingly, Plaintiff's discrimination claim against Metro Staffing must be dismissed.

### III. Retaliation

Finally, the Court will address Plaintiff's retaliation claim.[1] Title VII "prohibits employers from 'discriminat[ing] against ... [an] employee ... because [the employee] has opposed any [unlawful] employment practice, or because [the employee] has made a charge' that the employer has engaged in an unlawful employment practice." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 644 (6th Cir. 2015) (quoting 42 U.S.C. § 2000e-3(a)). "[T]o establish a *prima facie* case of retaliation, a plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Abbott v. Crown Motor Co.*, 348 F.3d 537,

---

[1] Defendant's Motion to Dismiss characterizes Plaintiff's claim as alleging two bases for retaliation: Plaintiff's initial sexual harassment complaint and his complaint that Ms. Sumner was retaliating against him. [DN 12-1 at 56]. At this point, Plaintiff has not provided additional clarification as to his retaliation claim. However, based on the Court's reading of the Complaint, Plaintiff's retaliation claim stems from his complaint regarding Ms. Sumner's actions on May 9, 2019. Ms. Sumner's actions following that incident, and Plaintiff's ultimate termination, constitute the alleged retaliation.

542 (6th Cir. 2003). "The Sixth Circuit explains that Plaintiff's burden in establishing [his] prima facie case for retaliation claims 'is not onerous, but one easily met.'" *Sherrills v. Wells Fargo Home Mortg.*, No. 1:15 CV 1733, 2017 WL 3783709, at *10 (N.D. Ohio Aug. 31, 2017) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

Defendants argue that Plaintiff has not stated a claim for retaliation because he failed to plead facts suggesting that he engaged in a protected activity under Title VII. [DN 12-1 at 56]. "Under Title VII, there are two types of protected activity: participation in a proceeding with the Equal Employment Opportunity Commission ("EEOC") and opposition to an apparent Title VII violation." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012) (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989)); *see also Yazdian*, 793 F.3d at 646 (holding that plaintiff's comments to employer, such as "I'm going to respond with counsel," "I will have an attorney respond," "Hostile work environment", etc., put his employer on notice that the plaintiff believed his manager's conduct was illegal)). Plaintiff did not pursue this action until after he was termination from his position at Transcraft. Therefore, his termination was not due to his participation in a proceeding with the EEOC.

This leaves the second type of protected activity, "opposition to an apparent Title VII violation." *Wasek*, 682 F.3d at 469. "Under the opposition clause, the term 'oppose' carries its ordinary meaning." *Allman v. Walmart Inc.*, 418 F. Supp. 3d 224, 229–30 (S.D. Ohio 2019) (citing *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 276, 129 S.Ct. 846, 172 L.Ed.2d 650 (2009)). "It means, for example, to resist or antagonize." *Id.* "The Equal Employment Opportunity Commission ("EEOC") has identified a number of examples of 'opposing' conduct which is protected by Title VII, including complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because

8

the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer—e.g., former employers, union, and co-workers." *Johnson v. University of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000) (citing *EEOC Compliance Manual*, (CCH) ¶ 8006).

"While the means of opposition have been narrowly construed, the lawfulness of the employment practice has been broadly construed." *Booker*, 879 F.2d at 1312–13. "A person opposing an apparently discriminatory practice does not bear the entire risk that it is in fact lawful; he or she must only have a good faith belief that the practice is unlawful." *Id.* (citing *Love v. RE/MAX of Am., Inc.,* 738 F.2d 383, 385 (10th Cir. 1984); *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.,* 685 F.2d 1149, 1157 (9th Cir. 1982); *DeAnda v. St. Joseph Hosp.,* 671 F.2d 850, 853 n. 2 (5th Cir. 1982); *Rucker v. Higher Educ. Aids Bd.,* 669 F.2d 1179, 1182 (7th Cir. 1982); *Croushorn v. Board of Trustees,* 518 F.Supp. 9, 25 (M.D. Tenn. 1980)). Stated differently, "the employee complaining of a hostile work environment must 'actually believe[ ] that the conduct complained of constituted a violation of relevant law,' and 'a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee' would believe that the conduct complained of was unlawful." *Yazdian*, 793 F.3d at 646 (quoting *Rhinehimer v. U.S. Bancorp Invs., Inc.,* 787 F.3d 797, 811 (6th Cir. 2015)).

In this case, Plaintiff pled facts which could demonstrate that he opposed Ms. Sumner's conduct by complaining to company management. Specifically, he claims he "filed a harassment complaint" regarding the incident with Jason Hite, a member of Transcraft management, Barbie Johnson, the regional manger at Metro Staffing, and Crag Arnet, the plant manager at Transcraft. [DN 1-1 at 10–11]. Therefore, the issue before the Court is whether the Plaintiff pleaded facts to demonstrate a reasonable, good faith belief that Ms. Sumner's conduct was unlawful under Title VII.

Defendants argue that it was unreasonable for Plaintiff to believe that Ms. Sumner's actions were unlawful under Title VII. [DN 12-1 at 57]. Defendants cite *Clark County School Dist. v. Breeden* as support for their argument. 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). In *Clark County*, a school-district employee alleged that she was punished for opposing unlawful practices when she reported her supervisor for making a distasteful joke in her presence. *Id.* at 269–70, 121 S.Ct. 1508. The *Clark County* Court "found the comments alleged in the complaint to have occurred were so de minimis that no reasonable person would believe they would constitute sexual harassment, particularly in light of the fact that the complainant's job required her to review sexually oriented materials, and the complainant conceded that reviewing those materials did not bother or upset her." *Trujillo v. Henniges Auto. Sealing Sys. N. Am., Inc.*, 495 F. App'x 651, 656 (6th Cir. 2012), *as amended* (Oct. 17, 2012) (internal citations omitted).

Additionally, Defendants cite several other retaliation cases from the Sixth Circuit in order to argue that "[a] plaintiff must do more than complain about some conduct – he must show that he complained about conduct that is unlawful under Title VII." [*See* DN 12-1 at 56–58]. However, these cases are unpersuasive because they occurred at the summary judgment stage—and therefore were determined under a different standard—and they provide little to no discussion regarding the employee's reasonable, good faith belief in the illegality of the subject conduct. Ultimately, Defendants have not met their burden of proving that Plaintiff has failed to state a claim upon which relief may be granted. Ms. Sumner's insistence that Plaintiff photograph the lower part of her body, before and after putting pants on underneath her skirt at her desk while Plaintiff stood by, could more reasonably be perceived to be unlawful than what the employee in *Clark County* experienced. *See also Jones v. Westlake Mgmt. Servs., Inc.*, No. 5:18-CV-00085-TBR, 2018 WL 6729609, at *1 (W.D. Ky. Dec. 21, 2018) (finding plaintiff's observation of "a manager standing

over a young female employee, pointing his finger at her, and yelling at her while the employee cried over the inappropriate treatment," could more reasonably be perceived as unlawful than employee in *Clark County*). Plaintiff has pleaded sufficient facts for the Court to determine that a reasonable person in his position could conclude that Ms. Sumner's behavior was unlawful. Therefore, Defendants' motion to dismiss is denied as to the Plaintiff's retaliation claim.

## CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED**, Defendants' Motion to Dismiss for Failure to State a Claim, [DN 12], is **GRANTED** in part and **DENIED** in part. Plaintiff's claims against Barbie Johnson are **DISMISSED**; and Plaintiff's race-based discrimination claim against Metro Staffing is **DISMISSED**.

**IT IS SO ORDERED**.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

June 29, 2020

CC: Attorneys of Record

Bill Wimberly
919 Elizabeth Drive
Hopkinsville, KY 42240
270-484-1844
PRO SE

11